UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANKENMUTH MUTUAL INSURANCE
COMPANY, as subrogee of Anthony Gushow
& Sons, Inc.; and Anthony Gushow & Sons, Inc.,

    Plaintiff,

v.

CATERPILLAR, INC., and MacALLISTER
MACHINERY COMPANY, INC. d/b/a
MICHIGAN CAT

    Defendants.
_____/

Case No. 1:20-cv-12908
Honorable Thomas L. Ludington

# OPINION AND ORDER GRANTING DEFENDANT CATERPILLAR INC.'S MOTION TO DISMISS AND DISMISSING DEFENDANT CATERPILLAR INC.

On October 29, 2020, Plaintiff filed a two-count Complaint alleging negligence and breach of implied warranty of merchantability against Defendant Caterpillar, Inc. ECF No. 1. An Amended Complaint was filed on February 23, 2021 which added two counts of breach of express warranty and negligence against Michigan CAT. ECF Nos. 17, 18, 19.

Defendant Caterpillar, Inc. filed a motion to dismiss on March 9, 2021. ECF Nos. 22, 23. The response and reply briefs were timely filed. ECF Nos. 26, 28.

**I.**

Plaintiff insured Anthony Gushow & Sons, Inc. In 2018, Gushow purchased a wheel loader[1] from Michigan CAT. ECF No. 19 at PageID.70. In addition to the wheel loader, Gushow purchased a 60-month, 3000-Hour Extended Powertrain and Hydraulic + Technology Warranty Service Agreement. *Id.* After 273 hours of use, "a battery cable vibrated wildly in a manner that

---

[1] Neither party explains what a wheel loader is. However, it appears to be a large piece of construction equipment with a large shovel in the front to move material.

was undetected by those operating the equipment until it eventually severed and produced electrical arcing that ignited surrounding combustible materials and caused a fire that resulted in the total loss of the Wheel Loader." *Id.* Plaintiff has alleged that the "braided metal sensors and related warning technology [that covered the battery cables at issue] were included within the scope of the Warranty for the Wheel Loader from Michigan CAT." *Id.* at PageID.70–71. The wheel loader was destroyed by the fire. Plaintiff reimbursed subrogor Gushow at least $340,000 in damages from the fire. Plaintiff now brings this action against Defendants Caterpillar Inc. and Michigan CAT.

## II.

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The Sixth Circuit has held that "a conclusory legal interest" in forfeited property is insufficient to be successful against a motion to dismiss. *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014); *United States v. Akhtar*, 2018 WL 5883930 at *2 (6th Cir. Sept. 19, 2018).

**III.**

Defendant argues that the economic loss doctrine forecloses Plaintiff's tort claims. "The economic loss doctrine provides that 'where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses.'" *Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783, 784–85 (Mich. Ct. App. 2002) (quoting *Huron Tool & Engineering Co. v. Precision Consulting,* 532 N.W.2d 541, 543 (Mich. Ct. App. 1995)). The Michigan Supreme Court explained that "[t]his doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts." *Neibarger v. Universal Cooperatives, Inc.,* 486 N.W.2d 612, 616 (1992). The rationale for the economic loss doctrine is based on the policies served by tort and contract law.

> As developed by the courts, then, the individual consumer's tort remedy for products liability is not premised upon an agreement between the parties, but derives either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the consumer. Such a policy serves to encourage the design and production of safe products.
>
> On the other hand, in a commercial transaction, the parties to a sale of goods have the opportunity to negotiate the terms and specifications, including warranties, disclaimers, and limitation of remedies. Where a product proves to be faulty after the parties have contracted for sale and the only losses are economic, the policy considerations supporting products liability in tort fail to serve the purpose of encouraging the design and production of safer products.

*Id.* If the economic loss doctrine applies, Plaintiff's "exclusive remedy" is the Uniform Commercial Code, including its statute of limitations. *Id.* at 618.

"In Michigan, the economic-loss doctrine bars tort claims that seek to recover not just for losses to the *product itself* but also for foreseeable losses to *other property*." *Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 778 (6th Cir. 2019) (emphasis in original) (citing *Neibarger*, 486 N.W.2d at 619–20)). "The court thus sought to allow commercial parties to negotiate over which side will bear the risk of this additional property damage and incorporate that risk allocation into the contract price." *Id.* In addition, it "bar[s] a commercial plaintiff's tort suit against a product manufacturer even though the plaintiff did not directly contract with the manufacturer." *Crossing at Eagle Pond Apartments, LLC v. Lubrizol Corp.*, 790 F. App'x 775, 778–79 (6th Cir. 2019) (collecting cases).

Defendant argues that "[t]he only recovery sought in Plaintiffs' First Amended Complaint are for losses sustained to real and personal property, the Wheel Loader itself, as a result of the May 12, 2020 fire." ECF No. 23 at PageID.94. It further provides that,

> Despite premising the negligence claims in terms of a 'duty to exercise reasonable care', Plaintiffs have not made a single allegation of personal injury, nor have they alleged any other facts showing there was a breach of anything other than a contractual duty arising from the commercial sale of an allegedly defective product. Therefore, the sole remedy sought in Plaintiffs' negligence claim against Caterpillar is the recovery of economic losses, a recovery that is prohibited by Michigan's well-settled economic loss doctrine.

ECF No. 23 at PageID.94–95 (citations omitted). Defendant also contends that the economic loss doctrine precludes Count II (breach of implied warranty) because it is also a tort claim. *Id.* at PageID.95–96. Defendant explains that there were no personal injuries and "[b]ecause this case involves neither consumer transactions or personal injury, and because the damages sought herein are for alleged losses real and personal property, this case falls squarely within the boundaries of contract law." *Id.* at PageID.96. Defendant also makes a secondary argument that the claims are barred because of the limited warranty for the wheel loader.

In response, Plaintiff ignores Defendants' economic loss argument and argues that its subrogor never received a copy of the alleged limited warranty. ECF No. 26. However, Plaintiff offers no argument or legal authority for how the disputed limited warranty affects the applicability of the economic loss doctrine.

The Michigan Supreme Court has explained,

> The purpose of a tort duty of care is to protect society's interest in freedom from harm, *i.e.,* the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.

*Neibarger*, 486 N.W.2d at 615 (quoting *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 672 (N.J. 1985)). That is to say, the goal of tort law is not to prevent all harm, but harm "without reference to any agreement between the parties." *Id.* In this case, Plaintiff does not dispute that there was a contractual relationship between Gushow and Caterpillar, Inc. Instead, Plaintiff alleges that its subrogor never received the limited warranty. However, Plaintiff did not to bring a contractual claim against Defendant Caterpillar Inc. Instead, it alleged two tort claims, negligence and breach of implied warranty of merchantability against Defendant Caterpillar, Inc.

The Sixth Circuit's explanation of the doctrine is instructive. In *Detroit Edison*, pipes deteriorated at a power plant resulting in an explosion that caused personal injury and property damage. The Sixth Circuit held that "the approach adopted by *Neibarger* focuses our inquiry not so much on the magnitude or extent of the damage as on the parties involved and the nature of the product's use. Both parties in this case are sophisticated commercial entities of equivalent bargaining power; they were in a position to fully negotiate, before the fact, the issue of potential liability." *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 242 (6th Cir. 1994). The fact that both

parties were commercial entities, that the underlying transaction was for a sale of goods, and that the harm was only economic are the key variables here, not the potential applicability of a limited warranty. *See e.g.*, *State Farm Fire & Casualty Co. v. Ford Motor Co.*, 2010 WL 866149 *14 n.3 (Mich. Ct. App. March 11, 2010) (discussing *MASB-SEG Property/Casualty Pool, Inc. v. Metalux*, 586 N.W.2d 549 (Mich. Ct App. 1998)) ("[A] fire caused by a light fixture could reasonably be anticipated and contemplated should the fixture be faulty or defective. . . . [Also] the plaintiff-purchaser was a sophisticated commercial entity with the knowledge and ability to allocate liability in the purchase and sale agreement and that the light fixture was used for a commercial purpose."); *Citizens Ins. Co. v. Osmose Wood Preserving, Inc.*, 585 N.W.2d 314, 316 (Mich. Ct. App. 1998) ("Kim's is a commercial business and the wood treated with defendant's chemicals was purchased for commercial purposes, and because the damage to the restaurant was purely economic, under *Neibarger*, the UCC provides the exclusive remedy."). Thus, the economic loss doctrine precludes Plaintiff's tort claims.

### IV.

Accordingly, it is hereby **ORDERED** that Defendant Caterpillar Inc.'s Motion to Dismiss, ECF Nos. 22, 23, is **GRANTED**. Counts I and II of Plaintiff's Amended Complaint are **DISMISSED**.

It is further **ORDERED** that Defendant Caterpillar Inc. is **DISMISSED WITH PREJUDICE**.

Dated: May 7, 2021                                                s/Thomas L. Ludington
                                                                              THOMAS L. LUDINGTON
                                                                              United States District Judge